**ANDREWS KURTH LLP**
450 Lexington Avenue
New York, New York 10017
Paul N. Silverstein (PS 5098)
Jonathan Levine (JL 9674)
Telephone: (212) 850-2800
Fax: (212) 850-2929

Counsel to the Debtors

**GOLUB & GOLUB, LLP**
225 Broadway, Suite 1515
New York, New York 10007
Steven M. Golub, Esq. (SG-3592)
Remy J. Ferrario, Esq. (RF-4105)
Telephone: (212) 693-1000
Fax: (212) 693-0090

Counsel to the Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re: | Chapter 11 |
| : | Case Nos. 92-B-40026 (RDD) through |
| WINIMO REALTY CORP., et al., | 92-B-40045 (RDD), inclusive |
| : | |
| Debtors. | JOINTLY ADMINISTERED UNDER |
| : | CASE NO. 92-B-40026 (RDD) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE OF DEBTORS' SIXTEENTH OMNIBUS OBJECTION TO**
**(A) REQUEST FOR PAYMENT OF ADMINISTRATIVE**
**EXPENSE PURSUANT TO 11 U.S.C. §§ 503(b) (3) (D) and (b)(4), OF NICHOLAS CIRILLO**
**And (B) CLAIM NO. 441 FOR INDEMNITY AND CLAIM NO. 440 FOR INDEMNITY**

**PLEASE TAKE NOTICE** that at **10:00 a.m. (EST)** on **April 8, 2011**, Winimo Realty Corp., et

al., the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by its counsel,

Andrews Kurth LLP, and the Official Committee of Unsecured Creditors, by its counsel, Golub &

Golub, shall appear before the Honorable Robert D. Drain, United States Bankruptcy Judge, at the

Charles L. Brieant, Jr. United States Courthouse, First Floor, 300 Quarropas Street, White Plains, New York 10601-4140, or as soon thereafter as counsel may be heard (the "Hearing"), and present the Debtors' Sixteenth Omnibus Objection to Request For Administrative Expense filed by Nicholas Cirillo, Jr., Claim No. 441, dated February 5, 1998, filed as an administrative expense claim by Nicholas Cirillo, Jr. and Claim No. 440, dated February 4, 1998, filed as an administrative expense claim by Paul C. Cirillo seeking indemnity (the "Objection").

      **PLEASE TAKE FURTHER NOTICE** that responses to the Objection, if any, must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of this Court and shall be filed with the Bankruptcy Court electronically by registered users of the Bankruptcy Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at http:/www.nysb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (in either case, with a hard copy delivered directly to Chambers) and shall be served upon: (a) counsel to the Debtors, Andrews Kurth LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Paul Silverstein, Esq.), (b) counsel to the Official Committee of Unsecured Creditors, Golub & Golub, LLP, 225 Broadway, 15th Floor, New York, NY 10007 (Attn: Steven M. Golub, Esq.), (c) Kudman Thachten Aloe LLP, 350 Fifth Avenue, Suite 4400 New York, New York 10118 (Attn: Paul H. Aloe),, Attorneys for Nicholas Cirillo, and (d) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21St Floor, New York, New York 10004 (Attn: ) Brian S. Masumoto, Esq.), so as to be received no later than **April 1, 2011 at 4:00 p.m. (EST).**

      **PLEASE TAKE FURTHER NOTICE THAT** the Hearing may be adjourned from time to time without further notice other than the announcement of such adjournment in open court on

the Hearing date.

Dated: New York, New York
February 24 2011

GOLUB & GOLUB, LLP

By
Steven M. Golub, Esq. (SG-3592)
A Member of The Firm
225 Broadway, Suite 1515
New York, New York 10017
Telephone: (212) 693-1000
Fax: (212) 693-0090
sgolub@golublaw.com
rferrario@golublaw.com

Counsel to the Official Committee of
Unsecured Creditors

-and-

ANDREWS KURTH LLP
Paul N. Silverstein (PS-5098)
Jonathan Levine (JL- 9674)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 850-2800
Fax: (212) 850-2929
PaulSilverstein@andrewskurth.com
JonathanLevine@andrewskurth.com

Counsel to the Debtors

**ANDREWS KURTH LLP**
450 Lexington Avenue
New York, New York 10017
Paul N. Silverstein (PS 5098)
Jonathan Levine (JL 9674)
Telephone: (212) 850-2800
Fax: (212) 850-2929

Counsel to the Debtors

**GOLUB & GOLUB, LLP**
225 Broadway, Suite 1515
New York, New York 10007
Steven M. Golub, Esq. (SG-3592)
Remy J. Ferrario, Esq. (RF-4105)
Telephone: (212) 693-1000
Fax: (212) 693-0090

Counsel to the Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case Nos. 92-B-40026 (RDD) through |
| WINIMO REALTY CORP., et al., | : | 92-B-40045 (RDD), inclusive |
| Debtors. | : | JOINTLY ADMINISTERED UNDER |
| | : | CASE NO. 92-B-40026 (RDD) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' APPLICATION IN SUPPORT OF SIXTEENTH OMNIBUS OBJECTION
SEEKING ENTRY OF AN ORDER (A) DENYING REQUESTFOR PAYMENT OF AN
ADMINISTRATIVE EXPENSE PURSUANT TO 11 U.S.C. §§ 503(b)(3)(D) AND (b)(4)
BECAUSE THE SERVICES RENDERED DID NOT MAKE A SUBSTANTIAL
CONTRIBUTION TO THE CHAPTER 11 CASES, AND (B) EXPUNGING PROOF OF CLAIM
NO. 440 FILED BY NICHOLAS CIRILLO, Jr. AND PROOF OF CLAIM NO. 441 FILED BY
PAUL CIRILLO BOTH SEEKING INDEMNITY BECASUE, IF ANY AGREEMENT EXISTS
COMPELLING INDEMNITY, SUCH ARE NOT ATTACHED TO THE PROOFS OF CLAIM**

Winimo Realty Corp., et al., the above-captioned debtors and debtors in possession (collectively,

the "Debtors"), by its counsel, Andrews Kurth LLP, and the Official Committee of Unsecured Creditors, by its counsel Golub & Golub, LLP, jointly submit this application, pursuant to sections 105(a), 501, 502, 503 and 507 of Title 11 U.S.C. §§101 et. seq. (the "Bankruptcy Code"), and rules 3003(c)(3) and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and respectfully request an Order (A) denying the Request For Payment Of An Administrative Expense filed on January 5, 2007 (Docket No. 1347' "Request For Payment") by Nicholas Cirillo, Jr. ( "N. Cirillo"), (B) expunging Claim No. 441 filed by N. Cirillo (Exhibit "A") against Winimo Realty Corp, et al. as an administrative claim for indemnity, and (c) expunging Claim No. 440 filed by Paul C. Cirillo (Exhibit "B"; "P. Cirillo") Winimo Realty Corp, et al. as an administrative claim for indemnity (together the "Indemnity Claim" and P. Cirillo, together with N. Cirillo, referred to as "Claimants"), and granting such other and further relief as may be appropriate, for the reasons set forth below:

## RELIEF SOUGHT

2.      The Debtors request that the Court enter an order denying the Request For Payment filed by N. Cirillo and expunging the proofs of claim Nos. 440 and 441 filed by Claimants (the "Indemnity Claims")

## JURISDICTION, VENUE AND APPLICABLE STATUTES

3.      This Court has jurisdiction over the Objection pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105(a), 502 and 503(b) of the Bankruptcy Code, and rule 3007 of the Bankruptcy Rules. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

## BACKGROUND

4.      On January 3, 1992, each of the Debtors filed voluntary petitions for relief under

Chapter 11 of the Code.

5.     Pursuant to this Court's order, dated January 3, 1992, the Debtors' Chapter 11 cases were administratively consolidated pursuant to Bankruptcy Rule 1015(b).  Pursuant to Sections 1107(a) and 1108 of the Code, the Debtors manage, operate and administer their respective businesses.

6.     On February 12, 1992, the United States Trustee for the Southern District of New York appointed the Official Committee of Creditors Holding Unsecured Claims (the "Creditors' Committee") to represent all of the Debtors' unsecured creditors.

## OBJECTION

7.     The Debtors hereby object to the Request For Payment and the Indemnity Claims and seek entry of an Order, substantially in the form attached hereto (the "Proposed Order"), denying the Request For Payment and expunging the Indemnity Claims because, on the facts alleged (a) it is clear that the services rendered by N. Cirillo to the Debtors did not make a substantial contribution to the Chapter 11 Cases within the meaning of section 503(b) of the Bankruptcy Code and (b) if an indemnity agreement exists, such is not attached to the Proofs of Claim and the Claimants have failed to show that any alleged Indemnity Agreement provides for indemnity against the liability asserted by the Claimants.

## FACTS RELEVENT TO OBJECTION

### A.     Request For Payment of Administrative Claim

8.     On January 5, 2007, following entry of an order approving of a storage, throughput and repair funding agreement (the "Global Agreement") entered into among Cibro Petroleum Products, Inc., debtor ("CPPI") and Global Companies, Inc. and Global Montello Group Corp. (collectively, "Global"; the "Global Motion"), N. Cirillo filed the Request For Payment. The Request For Payment

seeks allowance of an administrative expense for reimbursement of compensation for professional services rendered by his counsel arising out of N. Cirillo's alleged substantial contribution to the estate of Cibro Petroleum Products, Inc. ("CPPI"), as described below.

9. On June 25, 2006, N. Cirillo filed his objection to the Global Agreement ("N. Cirillo Objection", Legal docket no. 1319) to the Global Motion (docket no. 1299) and Global Agreement.

10. Pursuant to the terms of the Global Agreement, Global agreed, at its cost and expense not to exceed $915,750.00, to perform certain repair work on two oil storage tanks (No. 35 and No. 36) to enable the storage tanks to handle and throughput No. 2 fuel oil, kerosene and diesel fuel and related petroleum distillate products. Tank No. 33, which was in operable condition, not in need of repairs, was to be used by Global to handle and throughput No. 2 fuel oil, kerosene and diesel fuel and related petroleum distillate products.

11. A dispute arose concerning, *inter alia*, the term of the Global Agreement, renewal options and the use of the storage tanks, and objections to the approval of Agreement were filed by N. Cirillo and the Creditors Committee ("Committee's Objection"; Legal docket no. 1322 and, although not relevant to the Request or this Objection, Sprague Energy Corp.). At that time, the Debtors were exploring the sale of the CPPI Albany terminal Facility ("Albany Terminal") with a number of interested parties including N. Cirillo who had previously submitted an offer to purchase the Albany Terminal. Pursuant to the Agreement, three tanks, representing 40% of the north tank farm total storage capacity, would only be used for storage and throughput of No. 2 fuel oil, kerosene and diesel fuel and related petroleum distillate products, and would not be suitable to store and throughput ethanol.

**B.** **N. Cirillo's Opposition To Global Motion And Basis For Request**

12.     In the Request For Payment, N. Cirillo asserts that he did not file an objection to the Global Motion prior to June 25, 2006 as "he assumed that counsel to the Committee would do so" (N. Cirillo Objection, Para. 15).   However, after learning that the Creditors' Committee had not yet filed an objection to the Sale Motion, on June 25, 2006, N. Cirillo filed his objection to the Global Motion. After exhausting its effort to reach a consensual resolution of the N. Cirillo Objection between the Debtors and Global, the Creditors' Committee filed its objection to the Sale Motion (the objection was filed almost four (4) weeks before the auction discussed below was conducted). The Committee Objection was heard and considered by the Court on August 10, 2006.

13.     N. Cirillo objected to the Global Motion because, in his view, the Agreement was not necessary and would, by its terms, "needlessly encumber the Albany Terminal when it is to be sold within a short period of time" (N. Cirillo Objection, Para. 16). N. Cirillo also objected on the following grounds: (i) the fees to be paid by Global for storage and throughputting were below current market rates'. and (ii) given that (as stated in the Global Motion) CPPI was in the process of maximizing the value of its assets for the benefit of its estate and creditors and would ultimately sell or otherwise dispose of the Albany Facility encumbering the Albany Facility with a long-term, below market lease was not in the best interests of CPPI or its creditors (Request, Para. 8).   As stated in his Objection, N. Cirillo and "an investor group submitted its bid [to purchase the Albany Terminal] pursuant to a letter of intent (N. Cirillo Objection, Para.11).

14.     At an August 10, 2006 hearing on the Global Motion, Counsel for N. Cirillo, in addition to the points raised in its written objection, also argued that there had not been sufficient notice of the Global Motion, and N. Cirillo's counsel provided the Court and counsel for CPPI and the Creditors' Committee with names of potential bidders who would be interested in bidding on the Agreement if given an opportunity to do so (Id., Para. 9). Counsel requested that

the Global Motion be denied and that an auction be noticed and scheduled at which the Agreement would be subject to higher and better offers (Request, Para. 9).

15.     After the hearing on August 10, 2006, CPPI and Global agreed to shorten the term of the Agreement to 26 months and to delete from the Agreement both the option periods and a separate right of first refusal and it was agreed that an auction would be held the following week. A revised Global Agreement was prepared by CPPI's counsel which became the model for the auction.

16.     On August 16, 2006, an auction was conducted at which Global successfully bid $.25 per barrel for 22 months.  One of the bidders that N. Cirillo had identified at the August 10, 2006 hearing (George E. Warren) actually appeared and bid at the auction thereby helping to drive up the price eventually accepted by CPPI. The Court then approved the Throughput Agreement as so modified. (Id. at Para. 12).

17.     As a result of the higher contract price achieved at the auction, N. Cirillo estimated that CPPI would receive $396,000.00 more during the 22 month term of the revised Agreement than it would have received during the same 22 month term under the original Agreement (Id., Para. 13).

18.     N. Cirillo asserts that in addition to the increased rental revenues set forth above, the rejection of the original Agreement increased the value that would ultimately be paid for the Albany Terminal when it is auctioned, because CPPI would not be burdened by (i) the eight one-year options that Global would have had under the original Throughput Agreement but gave up in the revised Agreement or (ii) the right of first refusal on other tanks at the Albany Terminal that Global would have had under the original Agreement but gave up in the revised Agreement.  N.

Cirillo asserts that without these encumbrances, the Albany Terminal would be of potential interest not only to companies that might want to use it as a warehouse for renting the tanks to other companies, but also for companies that may want to use them to store their own products. In addition, the only prospective buyer would be able to rent the tanks for fair market value, not the low fixed rates which Global was given under the original Agreement during the option years which ranged from $.16 to $.20 per barrel. In his Objection, N. Cirillo asserted that more potential bidders for the Albany Terminal along with greater potential revenues to those bidders would result in a higher value for the Albany Terminal. (N. Cirillo Objection, Para. 14)

19.    Based upon the above facts, N. Cirillo requests that the Court award N. Cirillo an administrative expense under section 503(b) of the Bankruptcy Code in the amount of $33,803.00 for the legal fees and expenses that N. Cirillo incurred in filing his the N. Cirillo Objection to the Global Motion.

20.    It is important to point out that at the time of the hearing on the Global Agreement N. Cirillo had placed a bid to purchase CPPI's Albany terminal. In fact, in paragraphs 10 and 11 of N. Cirillo's Objection, N. Cirillo forth the facts concerning his offer to purchase the Albany Terminal stating:

a.     N. Cirillo has been in frequent communication with Debtors' counsel about purchasing the Albany Terminal. After first being discouraged by Debtors' counsel from a strategy than involved funding an inside reorganization plan, Claimant was encouraged to submit a bid to purchase the Albany Terminal in a Section 363 sale, subject to higher and better offers.

b.     N. Cirillo and an investor group submitted its bid several months ago (presumably March -April 2006) pursuant to a letter of intent. Upon information and belief, the Claimant's bid was for the same amount of money as the bid mentioned in Court by Debtors' counsel and, unlike the prior bid, was submitted without any environmental contingency. However, Debtors did not submit Claimant's bid to the Court and advised N. Cirillo's counsel that it was inadequate, although no formal written rejection of the bid has been received by N. Cirillo.

## C.    Creditors' Committee Opposition to Global Motion

21.     The Creditors' Committee's objection was based on a review with Debtors' management, and Creditors' Committee conclusions that (i) it would be far more lucrative to store and throughput ethanol rather than No. 2 fuel oil (essentially home heating oil), (ii) the inventory turnover ratio for ethanol would be as high as 15 times per year, while the turnover for No. 2 fuel oil is estimated at 2.5 times per year, and (iii) at that time, the Debtors were able to charge significantly higher storage and throughput charges for ethanol then for No. 2 fuel oil. (Committee Objection, Para.11)

22.     The Creditors' Committee, in its objection to the Global Agreement also stated that entering into a contract with Global for a term of not less than two (2) years and possibly as long as ten (10) years, which was the maximum period of time taking into consideration the potential of eight (8) one year extensions, at Global's option, that were built into the Agreement, in effect would imprudently lock in those tanks to no. 2 fuel oil use and preclude their use for more lucrative ethanol use for up to ten (10) years. Accordingly, the Creditors' Committee concluded that such an extensive delay in commencing the time period during which tanks nos. 3, 35 and 36 could be used for the storage and throughput of ethanol was not a sound exercise of the Debtors' business judgment and was not in the best interest of the Debtors' estates and its creditors. (Committee Objection, Paras. 13-14)

23.     In essence, for the most part, N. Cirillo and the Creditors' Committee asserted similar arguments against approval of the Global Agreement.

24.     The court approved the Global Agreement, as modified, by Order dated August 17, 2006 (docket no. 1328).

## ARGUMENT

**POINT 1 –**
**(Request For Payment)**

25.     Section 503(b) of the Bankruptcy Code authorizes the Court to award compensation to

creditors for their legal and other expenses incurred, **provided the services of the creditor make a**

**"substantial contribution" in a case**.  The section, in pertinent part, provides as follows:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including-
>
> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by-
>
> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title.
>
> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

11 U.S.C. §§ 503(b)(3)(D) & (b)(4); emphasis supplied.

26.     The policy of Section 503(b) of the Bankruptcy Code is to "promote meaningful creditor

participation in the reorganization process. See generally *In re Jartran, Inc.*, 732 F.2d 584, 586-87 (7th

Cir.1984).  However, tension exists between this aim and the contrasting policy that administrative

expenses should be kept to a minimum. *In re United States Lines, Inc.*, 103 B.R. 427, 429

(Bankr.S.D.N.Y.1989), *aff'd*, Nos. 90 CIV 3823(MGC), 90 CIV 4491(MGC), 1991 WL 67464

(S.D.N.Y. Apr. 22, 1991). As a result, bankruptcy courts narrowly construe the availability of the

remedy afforded by §§ 503(b)(3) and (b)(4). *In re Glickman, Berkowitz, Levinson & Weiner, P.C.*, 196

B.R. 291, 294 (Bankr.E.D.Pa.1996); In re Stoecker, 128 B.R. 205, 208 (Bankr.N.D.Ill.1991)."

*In re Sentinel Management Group, Inc.*, 404 B.R. 488, 493 (Bankr. N. D. Ill. 2009). (emphasis supplied)

27.    The burden of proof is on the Claimant. *In re Best Products Co., Inc.*, 173 B.R. 862, 865 (Bankr. S.D.N.Y., 1994) ("§ 503(b) applicant must prove by a preponderance of the evidence that the services it rendered for which it seeks compensation provided a substantial benefit to the estate.")

28.    The starting point for this Court's analysis is the clear and unequivocal language of the two relevant sub-sections of section 503(b)(3)(D) and (b)(4) of the Bankruptcy Code:

> The language of section 503(b)(3)(D) is clear. It permits, among others a creditor, to receive as an administrative expense its actual, necessary expenses, (other than legal fees and expenses contemplated under section 503(b)(4)) <u>incurred when making a substantial contribution to a Chapter 11 case.</u>
>
> On its face, section 503(b)(4) is similarly precise. Section 503(b)(4) permits the bankruptcy court to allow, as an administrative expense, reasonable compensation for professional services rendered by an attorney for an entity whose own expenses may be allowed by the court as a substantial contribution to the case under one of the sub-sections   listed in 503(b)(3). 3 <u>Collier on Bankruptcy</u> ¶ 503.04, at 503-55[4] (15th ed.1995). Subsection (b)(4) must be read together with subsection (b)(3)(D). *In the Matter of Buckhead America Corp.*, 161 B.R. 11, 15 (Bankr.D.Del.1993).

*In re American Preferred Prescription, Inc.*,194 B.R. 721, 723-724 (Bankr. E.D.N.Y. 1996) emphasis supplied.

29.    Although substantial contribution is not defined by the Bankruptcy Code, the services rendered must "demonstrably and materially" contribute to the debtor's reorganization:

> 'Substantial contribution' is not defined by the Code. Courts therefore, have looked at <u>whether there has been a contribution that is considerable in amount, value and worth, which directly, demonstrably and materially contribute to the debtor's reorganization.</u> See *In re Alert Holdings, Inc.*, 157 B.R. 753, 757 (Bankr.S.D.N.Y.1993); *In re U.S. Lines, Inc.*, 103 B.R. 427, 429 (Bankr.S.D.N.Y.1989), aff'd, No. 90 Civ. 3823, 1991 WL 67464 (April 22, 1991); *In re Milo Butterfinger's Inc.*, 218 B.R. 856 (Bankr.N.D.Tex.1997*); Lebron v. Mechem Fin., Inc.*, 27 F.3d 937 (3d Cir.1994); *In re Oxford Homes, Inc.*, 204 B.R. 264 (Bankr.D.Me.1997). <u>Claims for substantial contribution are therefore narrowly construed and are subject to strict scrutiny.</u> *In re U.S. Lines, Inc.*, 103 B.R. at 429.

*In re Villa Luisa, L.L.C.*, 354 B.R. 345, 348 (Bankr. S.D.N.Y. 2006); emphasis supplied.

Accord: *In re Best Products Co., Inc.*, 173 B.R. 862, 865 (Bankr.S.D.N.Y.1994)

30.     The Court must "scrutinize the actual benefit" to the estate.  As noted, at the time of the hearings, N. Cirillo was engaged in efforts to place a bid to purchase the Terminal and, in fact had submitted a term sheet and offer to purchase the Albany Terminal for $5 million. The $5 million offer was considered by the Debtors and Creditors' Committee as woefully inadequate and not a "stalking horse" offer that could be used as an initial bid to put up for an auction against potential higher and better offers.  In the end, the CPPI Terminal was sold at auction for $10,400,000.00 sale.  The Creditors' Committee submits that N. Cirillo's Objection to the Global Sale did not <u>directly, demonstrably and materially contribute to the debtor's reorganization.</u>  There was no "casual connection" between the services allegedly rendered and the contribution to the estate.  Viewing the matter in hindsight, clearly N. Cirillo as a person interested in purchasing the Albany Terminal was acting in his own best interest and not the estates and therefore the Request must be denied:

> The substantial contribution test is applied in hindsight, and scrutinizes <u>the actual benefit to the case.  Accordingly, the applicant must show a "causal connection" between the service and the contribution.</u> *In re DP Partners Ltd. Partnership*, 106 F.3d at 673.

*In re Granite Partners*, 213 B.R. 440, 447 (Bankr. S.D.N.Y.1997)

31.     The Claimant must demonstrate that the services were substantial and beneficial.  The showing is difficult because generally creditors, as here, act in their own best interest:

> The burden of proving substantial contribution rests on the petitioning creditor and <u>it is exceedingly difficult since the general presumption is that the creditor is acting in its own interest.  Such an award is given only for "extraordinary creditor actions on those rare occasions when the creditor's involvement truly fosters and enhances the administration of the estate."</u> <u>See</u> *In re United Merchants*, No 99-5011, 1999 WL 972653, 1999 U.S.App. Lexis 24381 (2d Cir. Sept. 22, 1999).

*In re Villa Luisa, L.L.C.*, 354 B.R. 345, 348 (Bankr. S.D.N.Y. 2006); emphasis supplied.

32.     As stated in *In re Best Products Co., Inc.*, 173 B.R. 862, 865-866 (Bankr. S.D.N.Y.1994), the services must result in a direct, significant and demonstrably positive benefit **and not be duplicative**

**of services rendered by others:**

> Factors which the courts have considered in determining whether an applicant has made a substantial contribution in a chapter 11 case include: whether the services were provided to benefit the estate itself or all of the parties in the bankruptcy case; <u>whether the services conferred a direct, significant and demonstrably positive benefit upon the estate; and whether the services were duplicative of services performed by others.</u> *In re FRG, Inc.,* 124 B.R. 653, 658 (Bankr.E.D.Pa.1991); *In re Buttes Gas & Oil Co.,* 112 B.R. 191, 194 (Bankr.S.D.Tex.1989).P/ 865-866.

33.     Not only were the services duplicate of those of the Creditors' Committee, but, clearly, N. Cirillo was acting in his own best interest in filing an objection primarily designed to maximize the prospective value of the Albany Terminal in light of N. Cirillo's pending offer to purchase the Albany Terminal which was the only offer to purchase the Albany Terminal at the time of the hearing on the Global Motion:

> <u>And efforts undertaken by creditors solely to further their own self-interest are not compensable under section 503(b)</u>. *In re Lister,* 846 F.2d 55, 57 (10th Cir.1988). The integrity of § 503(b) can only be maintained by strictly limiting compensation to extraordinary creditor actions which lead directly to tangible benefits to the creditors, debtor or estate. Compensation must be preserved for those rare occasions when the creditor's involvement truly fosters and enhances the administration of the estate. *Richton,* 15 B.R. 854. Thus, the general rule remains that attorneys must look to their own clients for payment. *McLean,* 88 B.R. at 38. P. 866

*In re Best Products Co., Inc.,* 173 B.R. 862, 866 (Bankr. S.D.N.Y.1994) emphasis supplied.

Accord: *In re Alert Holdings Inc.,* 157 B.R. 753, 757 (Bankr.S.D.N.Y.1993 ("And efforts undertaken by creditors solely to further their own self-interest are not compensable under section 503(b). *In re Lister,* 846 F.2d 55, 57 (10th Cir.1988)").

34.     N. Cirillo's role in the sale did not provide a substantial contribution to the Debtor's estate, but rather, at best indirectly enhanced the value of an asset that N. Cirillo was attempting to purchase at the time his Objection was filed. Based on all of the foregoing, the Creditors' Committee submits that the Request must be denied because such an award is only for services which are not duplicative and only for "extraordinary creditor actions on <u>those rare occasions when the creditor's</u>

involvement truly fosters and enhances the administration of the estate and should not be granted when the actions of the creditor are in support of ¹the creditor's best interest." *In re Villa Luisa, L.L.C.*, *supra*, 354 B.R. at 348 (emphasis supplied).

**POINT II**

**THE INDEMNITY CLAIMS**

**A.    FACTS**

35..    On or about February 5, 1998, N. Cirillo filed claim no. 441 for indemnity as an administrative claim against Winimo Realty Corp., et al, Debtors in the amount of $26,350.00.

36.    On or about February 4, 1998, P. Cirillo filed claim no. 440 for indemnity as an administrative claim against Winimo Realty Corp., et al, Debtors in the amount of $31,050.00.

37.    On April 15, 2008, the Debtors filed their Fifth Motion for Omnibus Objection to Claims which included the Indemnity Claims filed by the Claimants. Pursuant to Order dated May 28, 2008, the Court entered an Order which, *inter alia*, reduced P. Cirillo's claim from $31,050.00 to $13,387.16 and reduced N. Cirillo's claim from $26,350.00 to $6,000.00.   Thereafter, the Motion papers were returned to the Debtors because of an incorrect delivery addresses.   In view of this, the Proposed Order provides that the Order Granting Fifth Omnibus Objection With Respect to Certain Trade Claims of this Court, dated May 27, 2008, is amended to provide that it is of no effect as against proofs of claim Nos. 440 and 441 filed by the Claimants.

38.    Except for their amounts, the Indemnity Claims are essentially duplicates.  The Indemnity Claims concern an environmental "problem" and a "target letter" which Claimants received, on or about July 2, 1996, from the United States Attorney for the Northern District of New York ("US Attorney"), advising Claimants of a New York State Department of Environmental Conservation ("DEC") investigation into illegal disposal of asbestos at the Cibro Petroleum Products Syracuse Asphalt

Terminal in Clay, New York (the "Target Letter"). The DEC's investigation, "revealed evidence which strongly implicates you [Claimants] in the commission of this offense." Claimants retained counsel for the defense of the DEC allegations. The letters are attached to Claims Nos. 440 and 441 as Exhibit "C" thereto

39.     In the Target Letter it is stated that:"Our office is currently considering the matter for presentation to a Federal Grand Jury for Indictment. We will, however, discuss an alternative disposition of this case with your attorney, if your counsel contacts this office prior to July 12, 1996." Thereafter, Claimants respective attorneys advised Claimants that based upon a plea agreement negotiated with the United States Attorney; they would each be subject to a $5,000.00 fine.

40.     P. Cirillo, N. Cirillo's brother, notified CPPI for himself and on behalf of N. Cirillo, of the receipt of the "target" letter (Exhibit "D" to Claim No.441), and of their alleged right to indemnification under a certain Indemnity Agreement, a copy of which was purportedly annexed to the Claim Nos. 440 and 441. However, there is not any Indemnity Agreement attached to the Proofs of Claim.

41.     N. Cirillo's claim no. 441 in the aggregate amount of $ 26,350.00 (Exhibit "E" to the claim) for indemnity arises from the target letter and his counsel's defense of the DEC's allegations. N. Cirillo's Indemnity Claim seeks payment of (a) attorney's fees and expenses totaling some $21,000.00 through October 29, 1997, (b) a $5,000.00 fine imposed under a "plea agreement", and (c) travel expenses of about $350.00.

41.     As set forth in the attachment to the Claim:

| Legal expenses | $1,000.00 (paid) |
| | $5,000.00 (paid) |
| | $15,000.00 **(estimated)** |
| | |
| Fine | $5,000.00 **(estimated)** |

14

Travel expenses –     $350.00 **(estimated in part)**

Total:  $ 26,350.00

42.     P. Cirillo's claim no. 440 in the aggregate amount of $ 31,050.00 for indemnity arises from the target letter and his counsel's defense of the DEC's allegations.  P. Cirillo's Indemnity Claim seeks payment of (a) attorney's fees and expenses totaling some $21,000.00 through October 29, 1997, (b) a $5,000.00 fine imposed under a "plea agreement", and (c) travel expenses of about $350.00. As set forth in the attachment to the Claim filed by Paul Cirillo, he seeks the following amount:

Legal expenses $     6,153.65 (paid)

$7,233.51 (paid)

$12,000.00 **(estimated)**

Fine     $5,000.00 **(estimated)**

Travel expenses -     $662.84 **(estimated in part)**

Total:  $ 31,050.00

## B.     Argument

43.     "Where an agreement provides for indemnity against liability under specified circumstances, the party seeking indemnity ordinarily must prove that he is in fact liable under the particular circumstances described in the agreement ". *Carey Transp., Inc.* v. *Greyhound Corp.*, 80 B.R. 646 (Bankr. S.D.N.Y.1987). Here, the Debtors have not located the alleged Indemnity Agreement referred to by Claimants and Claimants have not attached a copy thereof to their proofs of claim.  Accordingly, it cannot be determined if the liability claimed is provided for in the Indemnity Agreement or that the circumstances called for an indemnification under the Indemnity Agreement.  Therefore the Indemnity Claims should be expunged.

44.     Additionally, Claimants have not offered any evidence to substantiate their payment of the amount

claimed paid ($6,000 by N. Cirillo and $13,387.16 by P. Cirillo). Likewise, there is nothing which supports the estimated balance of their Indemnity Claims. Lastly, the Indemnity Claims were not incurred as a result of an investigation into an oil spill for which the US Attorney fined the Claimants $5,000.00 each under a plea bargain and Claimants are not entitled to reimbursement as an expense of administration of the estate."

45.     Lastly, as argued below, the Indemnity Claims do not qualify as an administrative claim and must be expunged.

46     To be accorded administrative status, the Indemnity Claims must both (1) arise from a transaction with the debtor-in-possession and (2) be beneficial to the debtor-in-possession in the operation of the business." *In re Jartran*, Inc., 732 F.2d 584, 587 (7th Cir.1984) (quotations omitted).

47.     Administrative priority claims are to be strictly construed because the presumption in bankruptcy cases is that the debtor has limited resources that will be equally distributed to creditors." *In re Nat'l Steel Corp.*, 316 B.R. 287, 299 (Bankr.N.D.Ill.2004). The burden of showing by a preponderance of the evidence, that the Indemnity Claim is entitled to administrative expense priority is on the Claimants. Id. (citations omitted).

48.     Claimants neither argue that the Indemnity Claim arose from a transaction with the debtor-in-possession nor that the Indemnity Claims were beneficial to the estate and for those reasons the Indemnity Claims must be expunged.

49.     The Indemnity Claims do not arise out of a transaction with the debtor-in-possession but rather from a plea agreement negotiated by Claimants' counsel. The second reason Claimant fails to prove an entitlement to an administrative claim is because Claimants have not shown, by a preponderance of the evidence, that the Indemnity Claims benefitted the Debtor's estate in any way, but rather benefitted solely the Claimant.

50.     For all the foregoing reasons, the Indemnity Claims must be expunged.

## RESERVATION OF RIGHTS

51.    The Debtors reserve their right to object on any basis to any proofs of claim filed by the Claimants.

## MEMORANDUM OF LAW

52.    This Objection includes citations to the applicable authorities and a discussion of their application to this Objection. Accordingly, the Debtors respectfully submit that such citations and discussion satisfy the requirement that the Debtors submit a separate memorandum of law in support of this Objection pursuant to Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York.

## NOTICE

53.    Notice of this Objection has been provided to: the Claimants, counsel for N. Cirillo and the Office of the United States Trustee. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

**WHEREFORE,** the Debtors respectfully request that the Court enter an Order, substantially in the form of the Proposed Order attached hereto as Exhibit "C", granting the relief requested herein and

granting to the Debtors such other and further relief as is just and proper.

Dated: New York, New York
February 24, 2011

GOLUB & GOLUB, LLP

By: _____
Steven M. Golub, Esq. (SG-3592)
A Member of the Firm
225 Broadway, Suite 1515
New York, New York 10017
Telephone: (212) 693-1000
Fax: (212) 693-0090

Counsel to the Official Committee
of Unsecured Creditors

-and-

ANDREWS KURTH LLP
Paul N. Silverstein (PS-5098)
Jonathan Levine (JL- 9674)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 850-2800
Fax: (212) 850-2929

Counsel to the Debtors

_____

●

**EXHIBIT "A"**

**Claim No. 441**

T 1031—Proof of claim, Official Form 10, power of attorney, Official Form 11A, 8-91.

ORIGINAL

UNITED STATES BANKRUPTCY COURT JULIUS BLUMBERG, INC. PUBLISHER, NYC 10013
SOUTHERN DISTRICT OF NEW YORK
WINIMO REALTY CORP
CASE # 9240026 THROUGH # 9240045
0441

FORM B10 (6-90)

**FORM 10. PROOF OF CLAIM**

| United States Bankruptcy Court | **PROOF OF CLAIM** |
|---|---|

SOUTHERN _____ District of NEW YORK

In re (Name of Debtor)

WINIMO REALTY CORP., ET AL.

Case Number 92-B-40026 (CB) through
94-B-40045 (CB) Jointly administered
under 92-B-40026

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" of payment of an administrative expense may be filed pursuant to 11 U.S.C. §503.

Name of Creditor (The person or entity to whom the debtor owes money or property)

NICHOLAS W. CIRILLO, JR.

Name and Addresses Where Notices Should be Sent

Nicholas W. Cirillo, Jr.
15 The Farms Road
Bedford, N.Y. 10506

Telephone No.

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

**00441**

THIS SPACE IS FOR COURT USE ONLY

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:

Check here if this claim ☐ replaces ☐ amends a previously filed claim, dated_____

**1. BASIS FOR CLAIM**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☒ Other (Describe briefly) See Statement of Claim attached

- ☐ Retiree benefits as defined in 11 U.S.C. §1114(a)
- ☐ Wages, salaries, and compensations (Fill out below)
  Your social security number_____
  Unpaid compensations for services performed from (date)_____ to _____ (date)

**2. DATE DEBT WAS INCURRED**
March 1995 to date

**3. IF COURT JUDGMENT, DATE OBTAINED**

**4. CLASSIFICATION OF CLAIM.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured Nonpriority, (2) Unsecured Priority, (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM.

☐ SECURED CLAIM $_____
Attach evidence of perfection of security interest
Brief Description of Collateral:
- ☐ Real Estate ☐ Motor Vehicle ☐ Other (Describe briefly)

Amount of arrearage and other charges included in secured claim above, if any $_____

☐ UNSECURED NONPRIORITY CLAIM $_____
A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

☒ UNSECURED PRIORITY CLAIM $ 26,350.00   administration
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $2000), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507(a)(3)
- ☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(4)
- ☐ Up to $900 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507(a)(6)
- ☐ Taxes or penalties of governmental units - 11 U.S.C. §507(a)(7)
- ☒ Other - 11 U.S.C. §§507 (a) and 503 (Describe briefly)(1),503(b)

actual necessary costs and expenses of preserving the estate, i.e., expenses incurred for services rendered

**5. TOTAL AMOUNT OF CLAIM AT TIME CASE FILED:** $_____ (Unsecured)  $_____ (Secured)  $ 26,350.00 (Priority)

$26,350.00 (Total)

☐ Check this box if claim includes prepetition charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**6. CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

THIS SPACE IS FOR COURT USE ONLY

FEB 10   1 54 PH '97

**7. SUPPORTING DOCUMENTS:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. TIME-STAMPED COPY:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any). |
|---|---|
| 2/5/98 | [signature] |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both, 18 U.S.C. §§152 and 3571.

# STATEMENT OF CLAIM

I was employed by CIBRO PETROLEUM PRODUCTS, INC. ("CIBRO") and acted as Cibro's General Manager for supply and distribution until January 1, 1996. In or about March, 1995, I met with Bob Davis, Davis Consulting, HCR Box 110, Morrisville, VT 05661, to discuss a project to dismantle certain hardware, i.e., storage tanks and ancillary piping at Cibro's Clay (Syracuse), New York terminal. After receiving approval from the then chief executive officer, John Cirillo, and the Advisory Committee of the Debtors, I issued a letter of instructions or "work order" dated March 28, 1995 to Mr. Davis, followed up with a certain "Project Agreement" dated April 1, 1995.

During the course of my employment, I attended at the site, on one occasion on May 2, 1995 with the Debtor's chief executive officer, to meet with the consultant to observe the progress of the project. My brother, Paul Cirillo, also visited the site and met with the consultant during that period. He prepared a memorandum dated June 9, 1995, a copy of which is attached as Exhibit A. He was at the site on May 23, 1995, when an environmental problem was discovered and again on May 24, 1995, as described in his memorandum dated May 24, 1995, a copy of which is attached as Exhibit B.

On or about July 2, 1996 I received a "target" letter from the United States Attorney for the Northern District of New York, advising of "a New York State Department of Environmental Conservation investigation into illegal disposal of asbestos at the Cibro Petroleum Products Syracuse Asphalt Terminal in Clay, N.Y. As a result of that investigation, evidence has been developed which strongly implicates you in the commission of this offense." A copy of this letter is annexed as Exhibit C.

My brother Paul notified the Debtor, Cibro Petroleum Products, Inc., for himself and on my behalf, of the receipt of this "target" letter and of our right to indemnification under certain Indemnity Agreements, by letter dated July 19, 1996, a copy of which is annexed hereto as Exhibit D.

I have since incurred legal expenses totaling some $21,000.00 through October 29, 1997 for the services of attorneys I retained for my defense, Whiteman Osterman & Hanna, of Albany, New York (copies of their billing statements through October 29, 1997 are annexed hereto as Exhibit E). My attorneys have advised me that, based upon a plea agreement negotiated with the United States Attorney, I will also be subject to a $5,000 fine.

In addition I have incurred expenses for travel to and from Syracuse and Albany in connection with this matter which I estimate will aggregate approximately $350.00.

\85089\76955.1

Accordingly, the total costs and expenses that I have incurred and will incur in connection with the matter are some $26,350.00, as follows:

```
Legal expenses  -  $   1,000.00 (paid)
                        5,000.00 (paid)
                       15,000.00 (estimated)
Fine            -       5,000.00 (estimated)
Travel expenses -         350.00 (estimated in part)
                   $  26,350.00
```

I have not been reimbursed or indemnified for any of the aforementioned costs and expenses which were incurred by me in the course of and in connection with my employment by the Debtors-in-Possession and for which I am entitled to reimbursement as an expense of administration of the estate.

Dated:  February 5, 1998

_____
Nicholas W. Cirillo, Jr.

\85089\76955.1

**Exhibit A**

# M E M O R A N D U M

TO: FILE                 FROM: Paul Cirillo
Michael Gerrard
(VIA FAX NO. 212/715-1399)      DATE: June 9, 1995

---

SUBJECT: Cibro Syracuse Dismantling Project

---

Listed below in chronological order are my recollections of this project's progression leading up to the May 23 crisis:

3/27/95   -   At approximately 1:00 p.m. I arrived at the terminal with two laborers to remove all usable tools, etc. from the garage. Note this was my first visit to this facility. Met Bob Davis and Nick Cirillo, Jr. at the facility. Nick marketed items for Bob to remove.

3/28/95   -   At approximately 10:00 a.m. myself and laborers finished removal of all usable tools and departed. At approximately 1:00 p.m., we arrived at the Albany facility to drop off 5 drums of an asphalt additive; then departed for the Bronx.

4/3/95   -   P.M. - Arrived at Syracuse from Bronx.

4/4/95   -   A.M. - Met with Bob Davis at the terminal. He was in the process of dismantling tank 1 or 2(?) and had laborers scraping the foam insulation off tanks 3 and 4. Work was progressing rather quickly. Reported progress to Nick and John Cirillo verbally.

4/11/95   -   A.M. - Met with Bob Davis. Tank 2(?) down and started on tank 1. Scraping foam on tanks 3 and 4 going slow, because of the difficulty to remove. Left Syracuse for Albany.

              P.M. - Albany - Meet with Glenn McKenna and Don Yonkers. Briefly told them what was going on. Glenn warned me to watch Davis, he has a reputation of being "dirty", not always careful about not spilling oil. Reported to Nick and John verbally on progress.

4/18/95   -   A.M. - Syracuse - Checked on project; moving along well; tanks 1 and 2 down and gone; tank 4 coming down today. I witnessed tank 4 actually being brought down. Reported to Nick and John verbally on progress.



MEMO - FILE/MICHAEL GERRARD

5/2/95   -   John and Nick went for a site visit to facility.

5/5/95   -   A.M. - Syracuse - Checked on project; progressing well. Last tank down and being cut up for shipment. Note: The eastern side of the facility wasn't touched at this point. Bob did tell me that he was sick with a kidney stone problem. He, also, told me John C told him to remove steam lines and tressel from the boiler house to the asphalt tanks. (This was not on the original work order.)

        This was my last visit to the facility until the May 23rd crisis occurred.

/jam

Exhibit B

## M E M O R A N D U M

TO:  FILE                          FROM: Paul Cirillo
     Michael Gerrard
     (VIA FAX NO. 212/715-1399)     DATE: May 24, 1995

---

SUBJECT:  Cibro Syracuse Dismantling Tank Farm

---

In March of 1995, Cibro contracted the services of Davis Surplus to conduct the dismantling of the Syracuse facility and associated piping. It was later decided by management to remove all the piping leading from both docking facilities into the terminal.

In mid-April, Mr. Davis developed medical problems causing him to supervise the project from home (Vermont). In Mr. Davis' absence his workers began removing the insulation on the "dock" piping, not knowing that the materials contained asbestos. Mr. Davis claims his workers collected all the insulation wastes in a dumpster which was on site, and that during the pipe removal process a few gallons of the pipeline contents were spilled on the ground.

On Tuesday, May 23, 1995, a small fire occurred on the property, local fire department responded. By the time the local fire department arrived, the fire was extinguished. Sometime shortly after, the NYSDEC Region 8 was notified of an oil spill at the facility. Upon inspection of the site, the insulation debris was noted to be scattered about the facility, as well as in the public roadway and land alongside the Oneida River. This concerned the NYSDEC representative enough to cause him to have samples drawn and checked for asbestos. Up until this time, both Cibro and Davis believed the material to be sodium silicate, an insulating material used in place of asbestos, which is not a hazard to health and safety. This information was allegedly conveyed to Davis Surplus and the local fire marshall by one of Cibro's ex-employees, Robert Castelluccio. Mr. Castelluccio is presently still utilized by Cibro to draw separator samples on a monthly basis, however, he is not a full time employee of Cibro. At this point (May 23, 1995), I had John excuse himself from an Advisory Committee meeting to inform him of this occurrence.

The insulation samples drawn by the NYSDEC came back showing 57% asbestos content. Cibro ordered Clean Harbors, the spill clean-up contractor, to draw a set of samples and have them analyzed by an independent lab. Those samples results indicated an asbestos content of 67%. Upon receipt of the lab results, Cibro ordered the immediate evacuation of the affected areas; directed Clean Harbors to assemble an asbestos response team, and to properly

J3

MEMO - FILE/MICHAEL GERRARD

secure the area and begin the wetting down process to prevent further migration of the airborne contaminants.

Throughout the day (May 24, 1995), I had several telephone conversations with the NYSDEC and DOL (Dept. of Labor) representatives, both of which were satisfied with Cibro's response to the incident.

In the morning of Wednesday, May 25, 995, the Clean Harbors representative told me that the DOL was requesting security fencing around the entire facility. The fencing protocols and cost estimates were as follows:

```
730 Lin. ft. of 8 ft. chainlink
    with gates for the entrance  .........  $12,000.00

4000 Lin ft. of 3 ft. safety fencing
    for the perimeter  ...................   10,000.00

                        TOTAL  .......  $22,000.00
```

Upon receipt of this information, I immediately notified John Cirillo, who instructed me to abandon the response and insinuate to the DOL that Cibro doesn't have the funds to respond. This would initiate the federalizing of the response efforts by the governing regulatory agencies. John's logic was to let them clean it up and then claim against Cibro for the recovery.

Just prior to 12:00 noon on May 24, I met with John to tell him that Mike Gerrard's advice was not to walk away from the crisis, that the consequences would be much worse. I asked John to make a call to Gerrard to hear it for himself, which he agreed to do after lunch. After lunch, John was in an unrelated meeting with Nick Cirillo, Sr. That meeting ended at approximately 3:00 p.m., at which time I proceeded to John's office to sit in on the call to Gerrard. Unfortunately, John wasn't there. It seems that he left for Florida. Given his disregard and the lack of interest by others, I ordered the continuation of the response efforts. My actions were condoned by counsel.

J4

MEMO - FILE/MICHAEL GERRARD

I then contacted the DOL to attempt to negotiate the security fencing requirements. DOL in Syracuse instructed me to contact the head of engineering for DOL at their headquarters in Albany; which I did. Mr. Dan Sullivan, Head Engineer, informed me that the security fencing protocols were not fully addressed at that time, and that he did not expect to generate the protocols before midday Thursday, May 25, 1995. I immediately contacted the response team and cancelled the order for the fencing.

On Thursday, May 25, 1995, I will visit the site unannounced to assess the situation and determine whether or not the response contractor is misleading Cibro with regard to the severity of the incident.

/jam

**Exhibit C**



P.O. Box 7198                                      315-448-0672
100 South Clinton Street                      FAX: 315-448-0689
Syracuse, New York 13261-7198

June 25, 1996

Mr. Nicholous Cirillo, Jr.
c/o Cibro Petroleum Products, Inc.
1066 Zeraga Avenue
Bronx, NY 10462

Dear Mr. Cirillo:

This letter is in reference to a New York State Department of
Environmental Conservation investigation into the illegal disposal
of asbestos at the Cibro Petroleum Products Syracuse Asphalt
Terminal in Clay, NY. As a result of that investigation, evidence
has been developed which strongly implicates you in the commission
of this offense.

Our office is currently considering the matter for
presentation to a Federal Grand Jury for Indictment. We will,
however, discuss an alternative disposition of this case with your
attorney, if your counsel contacts this office prior to July 12,
1996. Please advise your attorney of this letter, discuss with him
the courses of action available to you, and request that he contact
our office at his earliest opportunity.

If I do not hear from your attorney by July 12, 1996, the
United States will pursue this matter in accordance with the law.

Sincerely,

THOMAS J. MARONEY
United States Attorney

By:

Craig A. Benedict
Assistant U.S. Attorney

CAB/ad
cc: Inv. Douglas Smith

(3)

Exhibit D

Paul C. Cirillo
60 The Farms Road
Bedford, New York 10506

Cibro Petroleum Products, Inc.                    7/19/96
1066 Zerega Avenue
Bronx, New York 10462

Attn: Mendel Grynsztejn, President
        William V. Cirillo, Vice-President

Re: Cibro Syracuse Terminal
        Petroleum and Asbestos Release of May 1995

Dear Gentlemen,

    On 7/03/96 I received a " target " letter, forwarded to me by yourselves,
from the U.S. Department of Justice regarding an investigation performed by
the New York State Department of Environmental Conservation. This letter
infers the possibility of a Grand Jury indictment based upon the results of
their investigation. As you know, I was an employee before, during and after
the incident reporting to and acting within the guise of Cibro and it's senior
management. As an employee, I was issued a series of Indemnity Agreements
covering all of the Cibro Group of companys. These agreements were entered
into on 7/24/93, signed by the President of Cibro at that time, and witnessed
by the Secretary of Cibro at that time.

    In accordance with Section 12 of the Indemnity Agreement, I am formally
notifying you that an indemnification event has ocurred. As per Section 4 of
the Indemnity Agreement I am requesting an advance for reasonable
expenses anticipated with relation to the above referenced issue. As per
Section 11, paragraph (c), I have appointed an attorney of my choice who
requires a base retainer of $ 7,500.00.

    I have enclosed copies of the pertinent Indemnity Agreements and "target"
letter for your review. It is reather clear that time is of the essence and a
prompt resolution of this issue would be greatly appreciated.

Please be advised this submission is made on my behalf as well as that of Nicholas W. Cirillo Jr. since he too has received the same "target" letter and is in the same unfortunate position as myself.

Should you have any questions or comments regarding any of the above, please don't hesitate to contact the undersigned at (914) 234-6108.

Sincerely,

Paul C. Cirillo

cc: Paul Silverstein, Esq.
    Andrews & Kurth
    w/encls.

Exhibit E



## ᴛᴏ WHITEMAN OSTERMAN & HANNA

ONE COMMERCE PLAZA · ALBANY, N. Y. 12260

(518) 487-7600
FAX (518) 487-7777

October 29, 1997
Invoice 123346
Page 1

Nicholas W. Cirillo, Jr.
15 The Farms Road
Bedford, New York    10506

Our Matter # 009230.001
    Cibro Investigation

    Retainer Due pursuant to services rendered in
    connection with Cibro Investigation
    ...............................$ 15,000.00


    General Retainer Billed on Account............$15,000.00

    TOTAL DUE FOR THIS MATTER................................$    15,000.00

●

**EXHIBIT "B"**

**Claim No. 440**

T 1031—Proof of claim, Official Form 10, power
of attorney, Official Form 11A, 8-91.



ORIGINAL

Bloomberg
Law Products

JULIUS BLUMBERG, INC.
PUBLISHER, NYC 10013

FORM B10 (6-90)

## FORM 10. PROOF OF CLAIM

| United States Bankruptcy Court | PROOF OF CLAIM |
|---|---|

**SOUTHERN** District of **NEW YORK**

In re (Name of Debtor)
**WINIMO REALTY CORP., ET AL.**

Case Number 92-B-40026 (CB) through
94-B-40045 (CB) Jointly administered under
92-B-40026

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. §503.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
WINIMO REALTY CORP
9200026 THROUGH # 9240045
0440

Name of Creditor (The person or entity to whom the debtor owes money or property)

**PAUL C. CIRILLO**

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and Addresses Where Notices Should be Sent

**Paul C. Cirillo**
**60 The Farms Road**
**Bedford, N.Y.   10506**

Telephone No.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

00440

ACCOUNT OR OTHER NUMBER BY WHICH CREDITOR IDENTIFIES DEBTOR:

Check here if this claim ☐ replaces   ☐ amends a previously filed claim, dated

**1. BASIS FOR CLAIM**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☒ Other (Describe briefly) **See Statement of Claim attached**

- ☐ Retiree benefits as defined in 11 U.S.C. §1114(a)
- ☐ Wages, salaries, and compensations (Fill out below)
  Your social security number
  Unpaid compensations for services performed from (date)_____ to_____ (date)

**2. DATE DEBT WAS INCURRED**
**March 1995 to date**

**3. IF COURT JUDGMENT, DATE OBTAINED**

**4. CLASSIFICATION OF CLAIM.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured Nonpriority, (2) Unsecured Priority. (3) Secured. It is possible for part of a claim to be in one category and part in another. CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM.

☐ SECURED CLAIM $_____
Attach evidence of perfection of security interest
Brief Description of Collateral:
- ☐ Real Estate  ☐ Motor Vehicle  ☐ Other (Describe briefly)

Amount of arrearage and other charges included in secured claim above, if any $_____

☐ UNSECURED NONPRIORITY CLAIM $_____
A claim is unsecured if there is no collateral or lien on property of the debtor securing the claim or to the extent that the value of such property is less than the amount of the claim.

administration
☒ UNSECURED PRIORITY CLAIM $ **31,050.00**
Specify the priority of the claim.
- ☐ Wages, salaries, or commissions (up to $2000), earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507(a)(3)
- ☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(4)
- ☐ Up to $900 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507(a)(6)
- ☐ Taxes or penalties of governmental units - 11 U.S.C. §507(a)(7)
- ☒ Other - 11 U.S.C. §§507 (a)(1)(a)(7) (Describe briefly) (1), 503(b)
  **actual necessary costs and expenses of preserving the estate, i.e., expenses incurred for services rendered**

**5. TOTAL AMOUNT OF CLAIM AT TIME CASE FILED:**
$_____ (Unsecured)   $_____ (Secured)   $ **31,050.00** (Priority)   $ **31,050.00** (Total)

☐ Check this box if claim includes prepetition charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**6. CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all amounts that claimant owes to debtor.

**7. SUPPORTING DOCUMENTS:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. TIME-STAMPED COPY:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

Date
**2/4/98**

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any).

_Paul C. Cirillo_

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§152 and 3571.

Form B11A 6/90

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF_____

In re_____     Case No. _____

_____
                          Debtor     Chapter_____

## POWER OF ATTORNEY
### of*

To

### of*                                                    and

## GENERAL POWER OF ATTORNEY *(Form 11A)*

The undersigned claimant hereby authorizes you, or any one of you, as attorney in fact for the undersigned and with full power of substitution, to vote on any question that may be lawfully submitted to creditors of the debtor in the above-entitled case. *[if appropriate]* to vote for a trustee of the estate of the debtor and for a committee of creditors; to receive dividends; and in general to perform any act not constituting the practice of law for the undersigned in all matters arising in this case.

Dated:                                          Signed: ...........................................................

                          *[If appropriate]* By ...........................................................

                                            as ...........................................................

                                      Address: ...........................................................

                                               ...........................................................

_____
* State mailing address

## ACKNOWLEDGMENT

STATE OF                          COUNTY OF                          ss.:

*[If executed by an individual]* Acknowledged before me on

*[If executed on behalf of a partnership]* Acknowledged before me on

by                                            who says that he [or she] is a member of the partnership named
above and is authorized to execute this power of attorney in its behalf.

*[If executed on behalf of a corporation]* Acknowledged before me on

by                                            who says that he [or she] is                          of
the corporation named above and is authorized to execute this power of attorney in its behalf.

.......................................................     ...........................................................

                                               *[Official character]*

No................

United States Bankruptcy Court

...............DISTRICT OF

# In Bankruptcy

IN THE MATTER OF

Debtor

## Proof of Claim
## and
## Power of Attorney

AMOUNT OF CLAIM $.................

(NAME)

(ADDRESS)

## STATEMENT OF CLAIM

I was employed by CIBRO PETROLEUM PRODUCTS, INC. ("CIBRO") and acted as Cibro's downstate environmental coordinator and terminal manager. In or about March, 1995, Cibro engaged Bob Davis, Davis Consulting, HCR Box 110, Morrisville, VT 05661, to dismantle certain hardware, i.e., storage tanks and ancillary piping at Cibro's Clay (Syracuse), New York terminal pursuant to a certain Project Agreement dated April 3, 1995 and letter of instructions dated March 28, 1995.

During the course of my employment, I attended at the site, on four occasions after March 27-28, 1995 through May 5, 1995, to meet with the consultant and observe the progress of the project, as set forth in my memorandum dated June 9, 1995, a copy of which is attached as Exhibit A. I was at the site on May 23, 1995, when an environmental problem was discovered and again on May 24, 1995, as described in my memorandum dated May 24, 1995, a copy of which is attached as Exhibit B.

On or about July 2, 1996 I received a "target" letter from the United States Attorney for the Northern District of New York, advising of "a New York State Department of Environmental Conservation investigation into illegal disposal of asbestos at the Cibro Petroleum Products Syracuse

Asphalt Terminal in Clay, N.Y. As a result of that investigation, evidence has been developed which strongly implicates you in the commission of this offense." A copy of this letter is annexed as Exhibit C.

I notified the Debtor, Cibro Petroleum Products, Inc., for myself and on behalf of my brother, Nicholas W. Cirillo, Jr., of the receipt of this "target" letter and of our right to indemnification under certain Indemnity Agreements, by letter dated July 19, 1996, a copy of which is annexed hereto as Exhibit D.

I have since incurred legal expenses totaling some $13,387.16 through October 2, 1997 for the services of attorneys I retained for my defense, Machenzie Smith Lewis Michell & Hughes, LLP of Syracuse, New York (copies of their billing statements through October 2, 1997 are annexed hereto as Exhibit E). My attorneys have estimated that an additional $12,000 in fees and expenses will be incurred until closure, and based upon a plea agreement negotiated with the United States Attorney, I will also be subject to a $5,000 fine.

In addition I have incurred expenses for travel to and from Syracuse and Albany in connection with this matter which I estimate will aggregate approximately $665.00. Accordingly, the total costs and expenses that I have incurred and will incur in connection with the matter are some $31,050., as follows:

\85089\76629.1

```
Legal expenses  -  $ 6,153.65 (paid)
                     7,233.51 (paid)
                    12,000.00 (estimated)
Fine            -    5,000.00 (estimated)
Travel expenses -      662.84 (estimated in part)
                   $31,050.00
```

I have not been reimbursed or indemnified for any of the aforementioned costs and expenses which were incurred by me in the course of and in connection with my employment by the Debtors-in-Possession and for which I am entitled to reimbursement as an expense of administration of the estate.

Dated:  February $\underline{4}$, 1998

Paul Cirillo

\85089\76629.1

Exhibit A

## M E M O R A N D U M

TO: **FILE**
**Michael Gerrard**
**(VIA FAX NO. 212/715-1399)**

FROM: **Paul Cirillo**

DATE: **June 9, 1995**

---

**SUBJECT: Cibro Syracuse Dismantling Project**

---

Listed below in chronological order are my recollections of this project's progression leading up to the May 23 crisis:

**3/27/95** — At approximately 1:00 p.m. I arrived at the terminal with two laborers to remove all usable tools, etc. from the garage. Note this was my first visit to this facility. Met Bob Davis and Nick Cirillo, Jr. at the facility. Nick marketed items for Bob to remove.

**3/28/95** — At approximately 10:00 a.m. myself and laborers finished removal of all usable tools and departed. At approximately 1:00 p.m., we arrived at the Albany facility to drop off 5 drums of an asphalt additive; then departed for the Bronx.

**4/3/95** — P.M. – Arrived at Syracuse from Bronx.

**4/4/95** — A.M. – Met with Bob Davis at the terminal. He was in the process of dismantling tank 1 or 2(?) and had laborers scraping the foam insulation off tanks 3 and 4. Work was progressing rather quickly. Reported progress to Nick and John Cirillo verbally.

**4/11/95** — A.M. – Met with Bob Davis. Tank 2(?) down and started on tank 1. Scraping foam on tanks 3 and 4 going slow, because of the difficulty to remove. Left Syracuse for Albany.

P.M. – Albany – Meet with Glenn McKenna and Don Yonkers. Briefly told them what was going on. Glenn warned me to watch Davis, he has a reputation of being "dirty", not always careful about not spilling oil. Reported to Nick and John verbally on progress.

**4/18/95** — A.M. – Syracuse – Checked on project; moving along well; tanks 1 and 2 down and gone; tank 4 coming down today. I witnessed tank 4 actually being brought down. Reported to Nick and John verbally on progress.



MEMO - FILE/MICHAEL GERRARD

__5/2/95__   —   John and Nick went for a site visit to facility.

__5/5/95__   —   A.M. - Syracuse - Checked on project; progressing well. Last tank down and being cut up for shipment. Note: The eastern side of the facility wasn't touched at this point. Bob did tell me that he was sick with a kidney stone problem. He, also, told me John C told him to remove steam lines and tressel from the boiler house to the asphalt tanks. (This was not on the original work order.)

This was my last visit to the facility until the May 23rd crisis occurred.

/jam

Exhibit B

TO: FILE                                    FROM: Paul Cirillo
    Michael Gerrard
    (VIA FAX NO. 212/715-1399)              DATE: May 24, 1995

---

SUBJECT: Cibro Syracuse Dismantling Tank Farm

---

In March of 1995, Cibro contracted the services of Davis Surplus to conduct the dismantling of the Syracuse facility and associated piping. It was later decided by management to remove all the piping leading from both docking facilities into the terminal.

In mid-April, Mr. Davis developed medical problems causing him to supervise the project from home (Vermont). In Mr. Davis' absence his workers began removing the insulation on the "dock" piping, not knowing that the materials contained asbestos. Mr. Davis claims his workers collected all the insulation wastes in a dumpster which was on site, and that during the pipe removal process a few gallons of the pipeline contents were spilled on the ground.

On Tuesday, May 23, 1995, a small fire occurred on the property, local fire department responded. By the time the local fire department arrived, the fire was extinguished. Sometime shortly after, the NYSDEC Region 8 was notified of an oil spill at the facility. Upon inspection of the site, the insulation debris was noted to be scattered about the facility, as well as in the public roadway and land alongside the Oneida River. This concerned the NYSDEC representative enough to cause him to have samples drawn and checked for asbestos. Up until this time, both Cibro and Davis believed the material to be sodium silicate, an insulating material used in place of asbestos, which is not a hazard to health and safety. This information was allegedly conveyed to Davis Surplus and the local fire marshall by one of Cibro's ex-employees, Robert Castelluccio. Mr. Castelluccio is presently still utilized by Cibro to draw separator samples on a monthly basis, however, he is not a full time employee of Cibro. At this point (May 23, 1995), I had John excuse himself from an Advisory Committee meeting to inform him of this occurrance.

The insulation samples drawn by the NYSDEC came back showing 57% asbestos content. Cibro ordered Clean Harbors, the spill clean-up contractor, to draw a set of samples and have them analyzed by an independent lab. Those samples results indicated an asbestos content of 67%. Upon receipt of the lab results, Cibro ordered the immediate evacuation of the affected areas; directed Clean Harbors to assemble an asbestos response team, and to properly

MEMO - FILE/MICHAEL GERRARD

secure the area and begin the wetting down process to prevent further migration of the airborne contaminants.

Throughout the day (May 24, 1995), I had several telephone conversations with the NYSDEC and DOL (Dept. of Labor) representatives, both of which were satisfied with Cibro's response to the incident.

In the morning of Wednesday, May 25, 995, the Clean Harbors representative told me that the DOL was requesting security fencing around the entire facility. The fencing protocols and cost estimates were as follows:

```
730 Lin. ft. of 8 ft. chainlink
     with gates for the entrance  .........  $12,000.00

4000 Lin ft. of 3 ft. safety fencing
     for the perimeter  ...................   10,000.00

                        TOTAL  .......  $22,000.00
```

Upon receipt of this information, I immediately notified John Cirillo, who instructed me to abandon the response and insinuate to the DOL that Cibro doesn't have the funds to respond. This would initiate the federalizing of the response efforts by the governing regulatory agencies. John's logic was to let them clean it up and then claim against Cibro for the recovery.

Just prior to 12:00 noon on May 24, I met with John to tell him that Mike Gerrard's advice was not to walk away from the crisis, that the consequences would be much worse. I asked John to make a call to Gerrard to hear it for himself, which he agreed to do after lunch. After lunch, John was in an unrelated meeting with Nick Cirillo, Sr. That meeting ended at approximately 3:00 p.m., at which time I proceeded to John's office to sit in on the call to Gerrard. Unfortunately, John wasn't there. It seems that he left for Florida. Given his disregard and the lack of interest by others, I ordered the continuation of the response efforts. My actions were condoned by counsel.

J4

MEMO - FILE/MICHAEL GERRARD

I then contacted the DOL to attempt to negotiate the security fencing requirements. DOL in Syracuse instructed me to contact the head of engineering for DOL at their headquarters in Albany; which I did. Mr. Dan Sullivan, Head Engineer, informed me that the security fencing protocols were not fully addressed at that time, and that he did not expect to generate the protocols before midday Thursday, May 25, 1995. I immediately contacted the response team and cancelled the order for the fencing.

On Thursday, May 25, 1995, I will visit the site unannounced to assess the situation and determine whether or not the response contractor is misleading Cibro with regard to the severity of the incident.

/jam

Exhibit C



U. S. Department Justice

*United States Attorney*
*Northern District of New York*

P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

315-448-0672
FAX: 315-448-0689

June 25, 1996

Mr. Paul Cirillo
c/o Cibro Petroleum Products, Inc.
1066 Zerega Avenue
Bronx, NY 10462

Dear Mr. Cirillo:

This letter is in reference to a New York State Department of Environmental Conservation investigation into the illegal disposal of asbestos at the Cibro Petroleum Products Syracuse Asphalt Terminal in Clay, NY. As a result of that investigation, evidence has been developed which strongly implicates you in the commission of this offense.

Our office is currently considering the matter for presentation to a Federal Grand Jury for Indictment. We will, however, discuss an alternative disposition of this case with your attorney, if your counsel contacts this office prior to July 12, 1996. Please advise your attorney of this letter, discuss with him the courses of action available to you, and request that he contact our office at his earliest opportunity.

If I do not hear from your attorney by July 12, 1996, the United States will pursue this matter in accordance with the law.

Sincerely,

THOMAS J. MARONEY
United States Attorney

By: ~~Craig A. Benedict~~

Craig A. Benedict
Assistant U.S. Attorney

CAB/ad
cc: Inv. Douglas Smith

Exhibit D

Paul C. Cirillo
60 The Farms Road
Bedford, New York 10506

Cibro Petroleum Products, Inc.                    7/19/96
1066 Zerega Avenue
Bronx, New York 10462

Attn: Mendel Grynsztejn, President
      William V. Cirillo, Vice-President

Re: Cibro Syracuse Terminal
    Petroleum and Asbestos Release of May 1995

Dear Gentlemen,

   On 7/03/96 I received a " target " letter, forwarded to me by yourselves,
from the U.S. Department of Justice regarding an investigation performed by
the New York State Department of Environmental Conservation. This letter
infers the possibility of a Grand Jury indictment based upon the results of
their investigation. As you know, I was an employee before, during and after
the incident reporting to and acting within the guise of Cibro and it's senior
management. As an employee, I was issued a series of Indemnity Agreements
covering all of the Cibro Group of companys. These agreements were entered
into on 7/24/93, signed by the President of Cibro at that time, and witnessed
by the Secretary of Cibro at that time.

   In accordance with Section 12 of the Indemnity Agreement, I am formally
notifying you that an indemnification event has ocurred. As per Section 4 of
the Indemnity Agreement I am requesting an advance for reasonable
expenses anticipated with relation to the above referenced issue. As per
Section 11, paragraph (c), I have appointed an attorney of my choice who
requires a base retainer of $ 7,500.00.

   I have enclosed copies of the pertinent Indemnity Agreements and "target"
letter for your review. It is reather clear that time is of the essence and a
prompt resolution of this issue would be greatly appreciated.

Please be advised this submission is made on my behalf as well as that of Nicholas W. Cirillo Jr. since he too has received the same "target" letter and is in the same unfortunate position as myself.

Should you have any questions or comments regarding any of the above, please don't hesitate to contact the undersigned at (914) 234-6108.

Sincerely,

Paul C. Cirillo

cc: Paul Silverstein, Esq.
    Andrews & Kurth
    w/encls.

Exhibit E

## MACKENZIE SMITH LEWIS MICHELL & HUGHES, LLP
### A REGISTERED LIMITED LIABILITY PARTNERSHIP
### LAW OFFICES

JAY W. WASON
CHARLES J. CRONIN
WILLIS B. LEMON
CARTER H. STRICKLAND**
DENNIS R. BALDWIN
GAY M. POMEROY*
KEVIN M. REILLY
EDWARD J. MOSES
CLAYTON H. HALE, JR.
ALFRED W. POPKESS
KENNETH E. ACKERMAN‡
ARTHUR A. CHALENSKI, JR.

DAVID M. GARBER
ARTHUR W. WENTLANDT
NANCY L. PONTIUS
FREDERICK J. MICALE
EDWARD J. SPENCER, III
CHARLENE E. McGRAW
DENNIS R. HENNIGAN
DOUGLAS C. JOHNSTON
STEPHEN T. HELMER
ERIC G. JOHNSON
ANTHONY R. HANLEY‡

P. O. Box 4967
SYRACUSE, NEW YORK 13221-4967

FEDERAL EXPRESS & UPS ADDRESS
101 South Salina Street, Suite 900
Syracuse, New York 13202

(315) 474-7571

FAX (315) 474-4218

laceyj@macklaw.com

JEFFREY T. LACEY

ANNE B. RUFFER
STEPHEN B. DAVIE
RICHARD P. JAMES
BARNEY F. BILELLO***
MARK T. HARRINGTON†
PETER D. CARMEN††
PATRICK V. DiDOMENICO***
MAUREEN DUNN McGLYNN†††
JENNIFER E. McCOOMBS†

YANG HSU
INTERNATIONAL COUNSEL

WILLIAM L. BROAD
CHARLES ANDREWS
JOHN E. MORRISSEY, JR.
JAMES H. O'CONNOR
COUNSEL

* ALSO ADMITTED TO FL BAR
** ALSO ADMITTED TO DC BAR
*** ALSO ADMITTED TO NJ BAR
† ALSO ADMITTED TO MA BAR
†† ALSO ADMITTED TO MA & DC BAR
††† ALSO ADMITTED TO DE BAR
‡ ALSO ADMITTED TO PA BAR
‡‡ NOT ADMITTED IN NY

October 22, 1997

Mr. Paul Cirillo
60 The Farms Road
Bedford, New York 10506

> Re: U.S. vs. Paul Cirillo
>     File No. 15781.0001

Dear Paul:

Transmitted herewith is your case billing statement running through October 2, 1997. The amount due therein has been applied to your current retainer account of $11,484.35, leaving a balance of unused retainer funds of $4,250.84 as of that date.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

MACKENZIE SMITH LEWIS MICHELL & HUGHES, LLP

Jeffrey T. Lacey

JTL:mkf
Encl.

# MACKENZIE SMITH LEWIS MICHELL & HUGHES, LLP

### 600 ONBANK BUILDING
### P.O. BOX 4967
### SYRACUSE, NY 13221-4967
### (315) 474-7571
### FEDERAL I.D. NO. 15-0373370

October 23, 1997

15781.0001

Please include this number with your remittance.

Paul C. Cirillo
60 The Farms Road
Bedford, NY 10506

Invoice No: 176195

===================================================================================

Re:  U.S. vs. Paul C. Cirillo

For PROFESSIONAL SERVICES rendered through October 21, 1997 and including:

| Date | Description | Atty | Hours |
|------|-------------|------|-------|
| 06/26/97 | Conference with Attorney Lacey. | RAM | .70 |
| 07/01/97 | Conference with Attorney Harrington re corporate resolution; letter to Mr. Paul Cirillo with current invoice and previous invoice, with revised corporate resolution; telephone conference with Nick Cirillo re above; telephone conference with Paul Cirillo re same. | JTL | 1.50 |
| 07/01/97 | Research joinder/severance issue. | RAM | 3.20 |
| 07/02/97 | Research evidence issues. | RAM | 2.80 |
| 07/03/97 | Research; conference with Attorney Lacey. | RAM | .50 |
| 07/08/97 | Research admission against interest. | RAM | 1.50 |
| 07/09/97 | Research deadman issue. | RAM | 2.60 |
| 07/11/97 | Work on memorandum. | RAM | 2.00 |
| 07/14/97 | Finalized memorandum. | RAM | 1.60 |
| 08/05/97 | Work on memorandum. | RAM | 1.00 |
| 08/06/97 | Work on memorandum. | RAM | 1.90 |
| 08/15/97 | Telephone conference with Mr. Paul Cirillo (twice); telephone conference with Attorney | JTL | 1.50 |

Fein re current status and meeting;
telephone conference with Department of
Labor's Mr. Heffernan re records review;
letters to Department of Labor (twice),
State Department of Health, County
Department of Health, USEPA Regions 1 and 2,
USDOT (OSHA), Clay Police Department, U. S.
Coast Guard, County Emergency Response, and
DEC re records check.

| Date | Description | | |
|------|-------------|---|---|
| 08/18/97 | Continued file review; follow up to FOIL letters, etc. | JTL | 1.00 |
| 08/26/97 | Review of New York State Department of Health file pursuant to FOIA; conference with Ron Heerkins. | JTL | 1.50 |
| 09/03/97 | Telephone conference with Assistant U.S. Attorney Benedict re further plea discussions; memorandum to file; review of USCA and sentencing guidelines; telephone conference with Paul Cirillo re further plea discussions; telephone conference with Attorney Fein re same and next week's meeting. | JTL | 2.50 |
| 09/11/97 | Traveled to Albany for conference with Paul Cirillo, Nick Cirillo, Attorney Fein and Attorney Bassinson re plea offer, counter-proposal, etc. | JTL | 7.00 |
| 09/16/97 | Receipt and review of FOIA related material; telephone conference with Fire Response Center (twice) re request; telephone conference with Police Department re same; telephone conference with Volunteer Fire Department re same; telephone conference with U.S. Coast Guard re records and redaction thereof; telephone conference with Attorney Fein re setting up further meeting with a Assistant U.S. Attorney Craig Benedict. | JTL | 2.00 |
| 09/17/97 | Letter to A.U.S.A. with background materials re plea discussions; telephone conference with Attorney Bassinson re same and request for research results and copy of Joint Defense Agreement; research of the U.S. Code and ECL. | JTL | 4.00 |
| 09/18/97 | Legal research. | JTL | 2.00 |

| | | | |
|---|---|---|---|
| 09/19/97 | Telephone conference with Attorney Fein and Attorney Bassinson re research; telephone conference with Assistant U.S. Attorney Benedict re conference call. | JTL | 2.00 |
| 09/22/97 | Telephone conference with Paul Cirillo re current status and probabilities; receipt and review of FOIA materials. | JTL | 2.00 |
| 09/26/97 | Receipt and review of FOIA request; DEC R-4; telephone conference re same; receipt and review of FOIA request response from Environmental Protection Agency; telephone conference with Environmental Protection Agency re same; receipt and review of FOIA response USCG; telephone conference with U. S. Cost Guard re same. | JTL | .60 |
| 09/30/97 | File review; preparation for meeting; drafting of argument notes; legal research for reduced plea. | JTL | 2.80 |
| 10/01/97 | File review; telephone conference with Assistant U.S. Attorney Benedict, DEC Investigator Smith, Attorney Bassinson, and Attorney Fein re further plea negotiations; follow up telephone conversation with Attorneys Fein and Bassinson re next steps and procedures. | JTL | 3.00 |
| 10/02/97 | Telephone conference with Paul Cirillo re debriefing of plea negotiations and plea offer, discussion of pros and cons and further procedures. | JTL | 1.00 |

SERVICES:

$7,183.00

DISBURSEMENTS:

| | |
|---|---|
| Photocopies (Outside) | |
| Postage | 8.00 |
| Telecopies | 3.00 |
| Long Distance Calls | 13.00 |
| Photocopies (Office) | 2.36 |
| | 24.15 |

$50.51

| | |
|---|---|
| Total Services and Disbursements: | $7,233.51 |
| Less Prepayments Applied: | ( $7,233.51) |
| AMOUNT DUE: | $.00 |

**MACKENZIE SMITH LEWIS MICHELL & HUGHES, LLP**

SUMMARY OF TOTAL DUE FOR THIS STATEMENT

| | |
|---|---|
| CURRENT FEES | $7,183.00 |
| CURRENT DISBURSEMENTS | $50.51 |
| CURRENT TOTAL | $7,233.51 |
| LESS PREPAYMENTS APPLIED | (    $7,233.51) |
| **TOTAL BALANCE DUE** | $          .00 |

In certain situations a service charge of 1% may be charged on outstanding invoices which are past due.

## MACKENZIE SMITH LEWIS MICHELL & HUGHES, LLP

### A REGISTERED LIMITED LIABILITY PARTNERSHIP

#### LAW OFFICES

P. O. Box 4967
SYRACUSE, NEW YORK 13221-4967

FEDERAL EXPRESS & UPS ADDRESS
600 OnBank BUILDING
SYRACUSE, NEW YORK 13202

(315) 474-7571

TELECOPIER (315) 474-6409

JAY W. WASON
CHARLES J. CRONIN
WILLIS B. LEMON
CARTER H. STRICKLAND··
DENNIS R. BALDWIN
GAY M. POMEROY·
KEVIN M. REILLY
EDWARD J. HOBES
GEORGE R. WOLFF
CLAYTON H. HALE, JR.
ALFRED W. POPKESS
KENNETH E. ACKERMAN‡
ARTHUR A. CHALENSKI, JR.
CATHERINE A. GALE
DAVID M. GARBER

ARTHUR W. WENTLANDT
NANCY L. PONTIUS
FREDERICK J. MICALE
EDWARD J. SPENCER, III
CHARLENE E. MC GRAW
DENNIS P. HENNIGAN
DOUGLAS C. JOHNSTON
STEPHEN T. HELMER
JAMES T. STOKES
JOHN F. SUTPHEN···
ERIC G. JOHNSON
DENNIS R. GOODRICH
ANTHONY R. HANLEY‡
KENNETH S. GOLDMAN

JEFFREY T. LACEY
ANNE B. RUFFER
STEPHEN S. DAVIE
RICHARD P. JAMES
BARNEY F. BILELLO ‡
MARK T. HARRINGTON ‡‡
THÉRÈSE WILEY DANCKS

NEAL P. McCURN, JR.
THOMAS J. FINN ‡‡
CHRISTOPHER R. MASON ‡‡‡
PETER D. CARMEN ‡‡‡‡
CRAIG T. SHOULDICE
EDWARD M. BROWN ‡‡‡
MICHAEL A. KUDARAUSKAS ‡‡

YANG HI‡‡
INTERNATIONAL COUNSEL

WILLIAM L. BROAD
CHARLES ANDREWS
JOHN E. MORRISSEY, JR.
JAMES H. O'CONNOR
COUNSEL

* ALSO ADMITTED TO FL BAR
** ALSO ADMITTED TO DC BAR
*** ALSO ADMITTED TO GA BAR
‡ ALSO ADMITTED TO NJ BAR
‡‡ ALSO ADMITTED TO MA BAR
‡‡‡ ALSO ADMITTED TO CT BAR
‡‡‡‡ ALSO ADMITTED TO MA & DC BAR
§ ALSO ADMITTED TO PA BAR
¶ NOT ADMITTED IN NY

November 19, 1996

Mr. Paul Cirillo
60 The Farms Road
Bedford, NY 10506

Re: **US vs. Paul Cirillo, File No. 15781.41.0001**

Dear Paul:

Transmitted herewith is your case billing statement run through September 30, 1996. The amount due therein has been applied to your original retainer of $7,500.00, leaving a balance of unused retainer funds of $1,346.35 as of that date.

Dependent upon the position taken by Assistant United States Attorney Benedict in response to your proffer, and the further investigation ongoing by DEC as a result thereof, there may be a need to replenish the retainer in the near future. If you have any questions, do not hesitate to contact me.

Very truly yours,

MACKENZIE SMITH LEWIS MICHELL & HUGHES, LLP

Jeffrey T. Lacey

JTL/ap
Enclosure

# MACKENZIE SMITH LEWIS MICHELL & HUGHES, LLP

### 600 ONBANK BUILDING
### P.O. BOX 4967
### SYRACUSE, NY 13221-4967
### (315) 474-7571
### FEDERAL I.D. NO. 15-0373370

November 19, 1996

15781.0001

Please include this number with your remittance.

Paul C. Cirillo
60 The Farms Road
Bedford, NY  10506

Invoice No: 170338

=================================================================================

Re:  U.S. vs. Paul C. Cirillo

For PROFESSIONAL SERVICES rendered through September 30, 1996 and including:

| | | | |
|---|---|---|---|
| 07/24/96 | Initial conference with Mr. Cirillo re individual history, employment history, Cibro and family history, incident and aftermath; site visit with client to Clay facility. | JTL | 6.00 |
| 07/25/96 | Review of documents provided by Mr. Cirillo; telephone conference with Attorney Gerrard re background and information sharing; correspondence to Mr. Cirillo transmitting copied documents, engagement letter and photocopy of retainer check. | JTL | 2.30 |
| 07/26/96 | Telephone conference with Mr. Cirillo re Cibro attorney's response to his indemnification request; received and reviewed template Joint Defense Agreement from Attorney Gerrard; telephone conference with Attorney Scott Fein re mutuality of clients' interest and possible Joint Defense Agreement; telephone conference with Mr. Cirillo re his proposed response to letter requesting information on indemnification agreement; re the substance and mechanics of a Joint Defense Agreement; letter to Craig Benedict re representation and requesting meeting; legal research re Joint Defense Agreements. | JTL | 1.50 |
| 07/29/96 | Telephone conference with Attorney Jim McGinty re DEC BECI interview of Robert Casteluccio; request for any existing notes and current telephone number. | JTL | .30 |

| | | | |
|---|---|---|---|
| 07/30/96 | Telephone conference with Attorney Jim McGinty re DEC BECI interview and his review of file; telephone conference with Attorney Gerrard re execution and format of Joint Defense Agreement; drafting of Joint Defense Agreement and revisions thereto; telephone conference with DEC's E. Armater re FOIA Cibro Consent Orders; telephone conference with DEC's Region 7 J. Piston re appointment for Cibro Clay Terminal FOIA file review re oil spill, MOSF and asbestos; telephone conference with Mr. Cirillo re update United States Attorney noncontact and Joint Defense Agreement. | JTL | 1.50 |
| 07/31/96 | Review at Region 7 DEC of MOSF file, Spill File, and videotape of site during response to incident; conference with John Piston; telephone conference with Assistant United States Attorney Craig Benedict re background and meeting; correspondence to Attorneys Fein and Gerrard with Joint Defense Agreement; letter fax to Mr. Cirillo re same. | JTL | 2.50 |
| 08/01/96 | Telephone conference with Paul Cirillo re AUSA contact and future meeting and Joint Defense Agreement; telephone conference with Scott Fein re same; telephone conference with AUSA re setting up date. | JTL | .70 |
| 08/08/96 | Telephone conference with Attorney Gerrard re Joint Defense Agreement; telephone conference with Paul Cirillo re same and asking him to leaverage it out; received and reviewed Cibro Consent Order. | JTL | .50 |
| 08/19/96 | Telephone conference with Attorney Scott Fein and Nick Cirillo, Jr. re strategy for meeting with AUSA Benedict; memorandum to file re same; telephone conference with DEC's Region 7's FOIA officer re prior request. | JTL | .50 |
| 08/20/96 | File review; meeting with AUSA Benedict and BECI Investigator Smith and Erickson; post-meeting conference with Attorney Scott Fein. | JTL | 3.00 |
| 08/21/96 | Debriefing telephone conference with Nick Cirillo and Attorney Scott Fein; debriefing conference with Paul Cirillo; dictation and correction of notes of meeting; telephone conference with Attorney Fein and faxing of notes to same. | JTL | 4.00 |

| | | | |
|---|---|---|---|
| 09/04/96 | Telephone conference with Paul Cirillo re offer of employment "consultant status" at Cibro. | JTL | .20 |
| 09/09/96 | Received and reviewed Paul Cirillo's memorandum responding to points made by Assistant United States Attorney during attorney conference; review of Clean Water Act and Clean Air Act and NESHAAPS Regulations regarding culpable mental state elements of offenses. | JTL | 1.50 |
| 09/10/96 | Initiating data base search for G. Lighthall; telephone conferences with Mr. Gerrard re joint defense agreement and Cirbro's status as target; telephone conference with Paul Cirillo re above and requesting him to get further data re Industrial Oil and Kleen Services, etc.; telephone conference with Attorney Fein re conference call. | JTL | 1.00 |
| 09/11/96 | Telephone conference with Attorney Scott Fein, Paul Cirillo and Nick Cirillo re proffer advisability and mechanics. | JTL | .50 |
| 09/11/96 | Complete DMV search on Mr. Lighthall; check with information re telephone numbers for Mr. Lighthall (no listing); memorandum to Attorney Lacy re same. | MKB | .60 |
| 09/19/96 | Telephone conference with Paul Cirillo, Nick Cirillo and Attorney Scott Fein re review of facts and preparation for Proffer Session. | JTL | 3.00 |
| 09/20/96 | Conference with Paul Cirillo; attendance at Proffer Session with Assistant United States Attorneys and DEC BECI Investigators. | JTL | 6.50 |

SERVICES:                                                          $6,077.00

DISBURSEMENTS:

| | |
|---|---|
| Photocopies (Outside) | 49.26 |
| Postage | 3.00 |
| Telecopies | 23.00 |
| Long Distance Calls | .34 |
| Photocopies (Office) | 1.05 |

                                                                  $76.65

Total Services and Disbursements:                                 $6,153.65

**MACKENZIE SMITH LEWIS MICHELL & HUGHES, LLP**

AMOUNT DUE:           $6,153.65

SUMMARY OF TOTAL DUE FOR THIS STATEMENT

| | |
|---|---|
| CURRENT FEES | $6,077.00 |
| CURRENT DISBURSEMENTS | $76.65 |
| CURRENT TOTAL | $6,153.65 |
| **TOTAL BALANCE DUE** | $     6,153.65 |

In certain situations a service charge of 1% may be charged on outstanding invoices which are past due.

●

**EXHIBIT "C"**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:                                          :          Chapter 11
                                                :          Case Nos. 92-B-40026 (RDD) through
WINIMO REALTY CORP., et al.,                    :          92-B-40045 (RDD), inclusive
                                                :
      Debtors.                                  :          JOINTLY ADMINISTERED UNDER
                                                :          CASE NO. 92-B-40026 (RDD)

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

## ORDER DENYING REQUEST FOR ADMINISTRATIVE
## EXPENSE PURSUANT TO 11 U.S.C. §§ 503(b)(3)(D) and (b)(4),
## EXPUNGING PROOFS OF CLAIM NOS. 440 AND CLAIM NO. 441

Upon the objection of Winimo Realty Corp., et al., the above-captioned debtors and

debtors in possession (collectively, the "Debtors"), by its counsel, Andrews Kurth LLP, and the

Official Committee of Unsecured Creditors, by its counsel, Golub & Golub, LLP, seeking entry

of an Order (a) denying the Request For Administrative Expense, (b) expunging Claim No. 441

filed by Nicholas Cirillo, Jr. ("N. Cirillo"), (c) expunging Claim No. 440 filed by Paul Cirillo

("P. Cirillo", together with N. Cirillo referred to as the "Claimants"), and (d) amending the Order

Granting Fifth Omnibus Objection With Respect to Certain Trade Claims of this Court, dated

May 27, 2008, for the reasons set forth in the Debtors' application (the "Objection")[1], and upon

the arguments and testimony presented at a hearing before the Court and any responses or

objections to the Objection having been resolved, withdrawn, or overruled on the merits, this

Court finds and concludes that the Court has jurisdiction over the subject matter of the Objection

and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; this is a core proceeding

pursuant to 28 U.S.C. § 157(b); the legal and factual bases set forth in the Objection and on the

record at the Hearing establish just cause for the relief granted herein; the relief requested in the

---

[1]  Capitalized terms used but not defined herein shall have the meanings set forth in the Objection.

Objection is in the best interests of the Debtors, their estates and their creditors; and notice of the Objection was sufficient, and no other or further notice need be provided; and after due deliberation and sufficient cause appearing:

**NOW THEREFORE**, the Court finds that the services of N. Cirillo provided to the Debtors do not amount to the making of a "substantial contribution" in the Chapter 11 cases within the meaning of section 305(b) of the Bankruptcy Code, and that the Indemnity Claims are either not allowable in the amount filed or as an expense of administration claim and should be reduced or expunged, and it is therefore

**ORDERED:**

1.    The Objection is granted as provided in this Order.

2.    The Request is denied with prejudice.

3.    N. Cirillo's Indemnity Claim No. 441 is disallowed and expunged and P. Cirillo's Indemnity Claim No. 440 is disallowed and expunged.

4.    The Debtors reserve their right to object on any basis to any proofs of claim filed by the Claimants.

5.    The Order Granting Fifth Omnibus Objection With Respect to Certain Trade Claims, dated May 27, 2008, is amended to provide that it is of no effect as against the Claim no. 440 filed by P. Cirillo and Claim No. 441 filed by N. Cirillo.

6.    The person responsible for maintaining the claims register in these Chapter 11 Cases is authorized to cause the claims register to be revised to reflect the relief granted by this Order.

7.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

8.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

9.     The requirement set forth in Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that any objection or other request for relief be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Objection or otherwise waived.

8.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Objection in these Chapter 11 Cases, the terms of this Order shall govern.

9.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated: White Plains, New York
       March _____2011


_____
ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re: : Chapter 11

Case Nos. 92-B-40026 (RDD) through

WINIMO REALTY CORP., et al., : 92-B-40045 (RDD), inclusive

: JOINTLY ADMINISTERED UNDER

Debtors. : CASE NO. 92-B-40026 (RDD)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### AFFIDAVIT OF SERVICE BY MAIL
### (SixteenthOmnibus Objection)

Remy J. Ferrario, being duly sworn, deposes and says:

I am not a party to this action, am over eighteen (18) years of age and reside in Queens County, New York. On February24, 2011, I served via U.S. Mail (a) the Notice of Debtors' Sixteenth Omnibus Objection (b) the Application In Support of the Objection and its Exhibit A (Proposed Order), Exhibit B (Claim No. 440), Exhibit C (Claim No. 441), and Exhibit D (Claim No. 103), true copies of such papers in a properly sealed envelope addressed to the (a) Paul Silverstein, Esq., Andrews Kurth LLP, 450 Lexington Avenue, New York, New York 10017, Counsel to the Debtors, (b) Paul H. Aloe, 350 Fifth Avenue, Suite 4400 New York, NY 10118, Attorneys for Nicholas Cirillo, Jr., (c) Nicholas Cirillo Jr., 16 Prospect Avenue, Darien Connecticut 06820, (d) Paul Cirillo, 60 The Farm Road, Bedford, New York 10506, and (e). Brian Masumoto, Esq., Assistant US Trustee, Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21St Floor, New York, New York 10004, with postage thereon fully paid, which was deposited with the U.S. Postal Service on that same day in the ordinary course of business.

Remy J. Ferrario

Sworn to before me on this 24th
Day of February 2011

NOTARY PUBLIC

IVAN BRAVERMAN
Notary Public, State of New York
No. 02BR6120970
Qualified in Nassau County
Commission Expires Jan. 3, 20 13